

**U.S. Department of Justice**

*United States Attorney's Office*
*District of New Jersey*

---

*Sam Thypin-Bermeo*                          *970 Broad Street, Suite 700*
*Assistant United States Attorney*            *Newark, New Jersey 07102*

August 21, 2025

<u>*Via ECF*</u>

Honorable William J. Martini
United States District Judge
Martin Luther King, Jr. Federal Building
 & United States Courthouse
Newark, New Jersey 07102

       **Re**:   <u>United States v. Nariq Petes</u>,
               Crim. No. 24-679

Dear Judge Martini:

Please accept this letter in lieu of a more formal submission as the Government's motion to admit certain evidence at trial of the above-referenced matter, currently scheduled for **September 25, 2025**.

## I.    Factual and Procedural Background

On October 11, 2024, a federal grand jury sitting in Newark, New Jersey, returned a three-count Indictment charging Nariq Petes with: (1) conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a); (2) Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951(a) and 2; and (3) using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2. ECF No. 22.

The factual background of the case is as follows:

On or about December 30, 2023, two people robbed a pharmacy in Livingston, New Jersey ("Victim Pharmacy"). The robbers each brandished firearms and made off with various prescription pharmaceuticals. At approximately 11:55 AM on that day, surveillance footage of the Victim Pharmacy's parking lot captured an individual driving a 2006 Mercury Grand Marquis bearing New Jersey license plate A81NSW, with the distinctive features of tinted windows, chrome trim, rims without center caps, and a white worn rectangular sticker on the rear bumper. The Grand Marquis hit a car in the Victim Pharmacy's parking lot and drove off.

Additional surveillance footage of the Victim Pharmacy's interior, around a half-hour later showed two individuals, one heavier ("Individual-1") and the other skinnier ("Individual-2"), enter the Victim Pharmacy wearing black pants, sweatshirts, and black ski masks. Individual-1 wore a two-toned gray glove with a red cuff and rubberized palm. Individual-1 and Individual-2 each carried a firearm openly in their respective right hands but Individual-1's firearm appeared to have a mounted light. Individual-1 directed Individual-2 with a push through the second aisle to approach the Victim Pharmacy's counter. Individual-1 then ran down the fourth aisle with a firearm pointed at an employee working behind the counter. Individual-2 grabbed a pharmacy employee ("Victim-1") and pressed a firearm into his ribs. Individual-1 ran behind the counter and grabbed a pharmacy employee by her hair and pushed a firearm against her head. Individual-1 and Individual-2 stuffed numerous prescription pharmaceuticals, including promethazine and oxycodone, into white plastic bags and ran out of the Victim Pharmacy.

The investigation led to law enforcement identifying Individual-1 as the defendant, Nariq Petes. Shortly after the robbery, law enforcement performed searches of Petes's car, bedroom, and cellphone, and recovered various pieces of evidence tying him to the crime. This evidence includes, among other things, text messages planning the robbery, text messages discussing the robbery proceeds, location data that places Petes in close physical and temporal proximity to the robbery, and physical items used and stolen in the robbery in Petes's bedroom shortly after the robbery.

## II.   Legal Arguments

### A. The evidence found in the searches of Petes's property and the Victim Pharmacy's surveillance videos are intrinsic to the charged offenses and, in the alternative, are admissible pursuant to 404(b).

The Government expects a law enforcement witness to testify about the various pieces of evidence recovered from the search of Petes's car, bedroom, and cellphone, as well as in a review of Victim Pharmacy's surveillance video. This includes, among other things, (1) a traffic ticket in Petes's name for the Grand Marquis approximately two weeks before the robbery; (2) video evidence that the Grand Marquis crashed into a car outside the Victim Pharmacy shortly before the robbery; (3) a non-stolen prescription bottle from the Victim Pharmacy found in Petes's room; (4) promethazine hydrochloride and dextromethorphan hydrobromide oral solution bottle stolen from the Victim Pharmacy; (5) a black ski mask resembling the black ski mask worn by Individual-1 during the robbery; (6) a photograph taken an hour after the robbery of a pill bottle marked Lot # 51311, an item that appeared on the Victim Pharmacy's inventory; (7) a

photograph of a Taurus G2Cm 9mm Luger Compact that resembled the type of weapon used during the robbery; (8) a picture of a mounted handgun light compatible with a Taurus G2Cm 9mm Luger Compact; (8) a loaded magazine compatible with Taurus G2Cm 9mm Luger Compact; (10) a two-toned gray glove with a red cuff and a rubberized palm—like the one worn by Individual-1 in the robbery; and (11) two white plastic bags that also resembled the bags used in the robbery.

Firstly, Federal Rule of Evidence 404(b) "does not extend to evidence of acts which are intrinsic to the charged offense." *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002) (internal quotations omitted); *see also United States v. Hoffecker*, 530 F.3d 137, 188-89 (3d Cir. 2008). Critically, "[i]f uncharged misconduct directly proves the charged offense, it is not evidence of some 'other' crime." *United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010) (quoting *United States v. Gibbs*, 190 F.3d 188, 218 (3d Cir. 1999)). This is because, "[w]hen the evidence of another crime is necessary to establish an element of the offense being tried, there is *no other crime.*" *United States v. Blyden*, 964 F.2d 1375, 1378 (3d Cir. 1992) (emphasis added). Additionally, "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." *Green*, 617 F.3d at 249 (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). Moreover, "[e]ven if the evidence is 'extremely prejudicial to the defendant, the court would have no discretion to exclude it because it is proof of the ultimate issue in the case.'" *Hoffecker*, 530 F.3d at 188-89 (quoting *Gibbs*, 190 F.3d at 218) (quoting 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5239, at 450-51 (1978)).

The following evidence that the Government seeks to admit at trial is intrinsic to the robbery:

- The traffic ticket in Petes's name for the Grand Marquis approximately two weeks before the robbery is evidence that Petes drove the Grand Marquis, the car used in the Robbery.
- The evidence that the Grand Marquis crashed into another car shortly before the robbery is evidence that Petes, in the Grand Marquis, drove to the Victim Pharmacy on the day of the robbery.
- The prescription bottle from the Victim Pharmacy found in Petes's bedroom is evidence that Petes had previously visited the Victim Pharmacy.
- The promethazine hydrochloride and dextromethorphan hydrobromide oral solution bottle stolen from the Victim Pharmacy and found in Petes's bedroom is evidence that he robbed the Victim Pharmacy and brought it back to his bedroom.

- The black ski mask found in his room resembling the black ski mask worn by a robber during the robbery is evidence that he used this ski mask during the robbery and brought it back to his bedroom.
- The photograph taken approximately an hour after the robbery of a pill bottle marked Lot # 51311, an item that appeared on the Victim Pharmacy's inventory, is evidence that Petes took the pill bottle during the robbery and photographed it after the robbery.
- The photograph on his phone of a Taurus G2Cm 9mm Luger Compact that resembled the type of weapon used during the robbery is evidence that he was the robber who used this firearm during the robbery.
- The picture of a mounted handgun light compatible with a Taurus G2Cm 9mm Luger Compact that resembled the light used during the robbery is evidence that he was the robber who used this firearm with the mounted light during the robbery.
- The loaded magazine compatible with Taurus G2Cm 9mm Luger Compact found in his bedroom is evidence that he was the robber who used this firearm during the robbery.
- The two-toned gray glove with a red cuff and a rubberized palm—like the one used in the robbery—found in his car is evidence that he was the robber who used this glove during the robbery.
- The two white plastic bags found in his car that also resembled the bags used in the robbery is evidence that he was one of the robbers who used these bags during the robbery.

All of this evidence "directly proves" the charged offenses, and, thus, is not evidence of other crimes. *Green*, 617 F.3d at 248-49. Nonetheless, and in an abundance of caution, the Government seeks in the alternative, for the limited purposes authorized by Federal Rule of Evidence 404(b), the admission of the evidence.

Federal Rule of Evidence 404(b) provides in pertinent part that:

(1) Prohibited Uses. Evidence of any other crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

The Rule is one of inclusion, "intended to emphasize admissibility of 'other crime' evidence." *United States v. Sriyuth*, 98 F.3d 739, 745 (3d Cir. 1996). The Rule favors the admissibility of such evidence unless it is

4

offered *solely* to show that a defendant has criminal propensities. *Huddleston v. United States*, 485 U.S. 681, 688-89 (1988); *see United States v. Johnson*, 199 F.3d 123, 128 (3d Cir. 1999) ("We favor the admission of such evidence, if relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime." (internal citations omitted)).

In *Huddleston*, the Supreme Court explained that, to be admissible, 404(b) evidence must: (1) have a proper evidentiary purpose, (2) be relevant under Federal Rule of Evidence 402, (3) have probative value that substantially outweighs its potential for unfair prejudice under Federal Rule of Evidence 403, and (4) be accompanied, upon requests, by an instruction to the jury "that the similar acts evidence is to be considered only for the proper purpose for which it was admitted." 485 U.S. at 691-92; *United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002); *see also United States v. Smith*, 725 F.3d 340, 345 (3d Cir. 2013) ("We . . . do not exclude evidence simply if it invites character inferences, but only evidence that is used to prove a person's character and that invites the inference that the person acted in conformity with that character.").

The Government, as the proponent of Rule 404(b) evidence, "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed [the proffered prior act], he therefore is more likely to have committed [the charged offense]." *United States v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992).

The Third Circuit has emphasized that district courts must rule "on the admission of prior act evidence for a non-propensity purpose" with "care and precision" "[t]o ensure that protections afforded by Rule 404(b) are not ignored." *United States v. Caldwell*, 760 F.3d 267, 277 (3d Cir. 2014). "'The reasoning should be detailed and on the record; a mere recitation of the purposes in Rule 404(b)(2) is insufficient.'" *Id.* (*quoting United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013)). In addition, the Government must explain how each piece of Rule 404(b) evidence is relevant to a non-propensity purpose that the Government anticipates will or could conceivably be "'at issue' in, or relevant to, the prosecution." *Caldwell*, 760 F.3d at 276.

Each of the pieces of evidence described above are also admissible for permissible 404(b) purposes:

- The traffic ticket Petes received in the Grand Marquis is evidence of identity: he drove the car that was involved in the robbery.
- The evidence that the Grand Marquis crashed into another car in the Victim Pharmacy's parking lot shortly before the robbery is evidence

- of identity: Petes accidently crashed the car while preparing for the Robbery.
- The prescription bottle found in Petes's bedroom is evidence of knowledge: Petes knew about the Victim Pharmacy before he robbed it.
- The promethazine hydrochloride and dextromethorphan hydrobromide oral solution bottle stolen from the Victim Pharmacy and found in Petes's bedroom is evidence of identity, knowledge, and motive. He robbed the Victim Pharmacy for this prescription drug.
- The black ski mask found in his room resembling the black ski mask worn by a robber during the robbery is evidence of identity. He was one of the robbers wearing the ski masks.
- The photograph taken approximately an hour after the robbery of a pill bottle marked Lot # 51311, an item that appeared on the Victim Pharmacy's inventory, is evidence of identity, knowledge, and motive. He robbed the Victim Pharmacy for this prescription drug.
- The photograph on his cellphone of a Taurus G2Cm 9mm Luger Compact that resembled the type of weapon used during the robbery is evidence of identity. He was the robber who used this firearm during the robbery.
- The picture of a mounted handgun light compatible with a Taurus G2Cm 9mm Luger Compact that resembled the light used during the robbery is evidence of identity. He was the robber who used this firearm with the mounted light during the robbery.
- The loaded magazine compatible with Taurus G2Cm 9mm Luger Compact found in his bedroom is evidence of identity. He was the robber who used this firearm during the robbery.
- The two-toned gray glove with a red cuff and a rubberized palm—like the one used in the robbery—found in his car is evidence of identity. He was the robber who used this glove during the robbery; and
- The two white plastic bags found in his car that also resembled the bags used in the robbery is evidence of identity. He was one of the robbers who used these bags during the robbery.

Should the Court find that the proffered evidence may have a prejudicial effect on the Defendant, such effect does not "substantially outweigh" the probative value of the evidence and should not be excluded under Rule 403. Trial judges should invoke Rule 403 only "sparingly" to exclude relevant evidence because of potential unfair prejudice. Weinstein's Federal Evidence § 403.2[2][a] (citing *United States v. Clifford,* 704 F.2d 86, 89-90 (3d Cir. 1983)). Evidence is unfairly prejudicial only if it suggests a decision on an improper basis. *See* Fed. R. Evid. 403, Advisory Committee Note.

The nature of the items described above, the proximity in time to the robbery of when they were recovered, the location of where they were recovered, and their direct connection to robbery make these items highly probative. No potential prejudice substantially outweighs such a high probative value in this case. Accordingly, to the extent that the Court determines that the evidence described above is not intrinsic to the charged crimes, the evidence should nonetheless be admitted under 404(b).

### B. If the Court determines that Petes should be shackled during trial, the Government respectfully requests that the Court make particularized findings on the record.

The Government respectfully requests that, in the event the Court determines that Petes's legs should be shackled during the course of the trial, the Court make particularized findings on the record and make arrangements to drape counsel's tables so the jury will not be able to see the shackling.

Neither district courts nor the U.S. Marshals Service may adopt a "general" or "routine" policy of shackling defendants or witnesses during trial. *Deck v. Missouri*, 544 U.S. 622, 626 (2005). Rather, defendants can be restrained only in cases where the court finds that the "perils of shackling are unavoidable." *Id.* at 632; *see also Sides v. Cherry*, 609 F.3d 576, 581 (3d Cir. 2010) (shackling should be permitted only "where justified by an essential state interest specific to each trial"). As the Supreme Court has noted:

> We do not underestimate the need to restrain dangerous defendants to prevent courtroom attacks, or the need to give trial courts latitude in making individualized security determinations. We are mindful of the tragedy that can result if judges are not able to protect themselves and their courtrooms. But given their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case.

*Deck*, 544 U.S. at 632. The Third Circuit has indicated that a court must make its own findings for the necessity of shackles, including specifics regarding the compelling need for the additional security, the fact that a less restrictive alternative to the security measures does not exist, and that restraining the defendant will not impair his ability to confer with counsel. *See Szuchon v. Lehman,* 273 F.3d 299, 314 (3d Cir. 2001). If the Court determines that shackling is appropriate, the Government respectfully requests that such particularized findings are made in the record.

7

### C. This Court should permit evidence of Petes's prior convictions, should he elect to testify at trial, pursuant to Federal Rule of Evidence 609.

Federal Rule of Evidence 609(a)(1)(B) provides that when a witness was convicted of a crime punishable by more than one year in the convicting jurisdiction, the criminal conviction "**must** be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant" (emphasis added). Rule 609(b) limits the admissibility of a prior conviction "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." As the Third Circuit has explained:

> Rule 609 is premised on "the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath." *Walden v. Georgia Pac. Corp.*, 126 F.3d 506, 523 (3d Cir. 1997) (citations omitted). Rule 609 evidence is admitted in order to inform the jury about the character of the witnesses whose testimony the jury is asked to believe. *Id.* (citing *United States v. Martinez*, 555 F.2d 1273, 1275 (5th Cir. 1977)). When a defendant chooses to testify at his trial, he places his credibility "directly at issue." *United States v. Beros*, 833 F.2d 455, 463-64 (3d Cir. 1987).

*United States v. Murphy*, 172 F. App'x 461, 462-63 (3d Cir. 2006).

Therefore, the evidence must be admitted so long as its probative value outweighs its prejudicial effect. To determine whether the probative value of the evidence outweighs its prejudicial effect, courts should analyze four factors: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the defendant's testimony to the case; and (4) the importance of the credibility of the defendant."  *Caldwell*, 760 F.3d 267, 286 (3d Cir. 2014) (citing *Gov't of V.I. v. Bedford*, 671 F.2d 758, 761 n.4 (3d Cir. 1982)).

Should Petes elect to testify at trial, the Government should be permitted to impeach him, pursuant to Federal Rule of Evidence 609(a)(1)(B), with evidence of the following **three** prior convictions:

- his May 22, 2023 convictions for unlawful possession of a handgun, in violation of N.J.S.A. 2C:39-3J, and possession of a controlled dangerous substance, in violation of N.J.S.A. 2C:39-10A (1), which are punishable by more than one year imprisonment; and

8

- his March 29, 2023 conviction for possession with intent to distribute a quantity of a mixture and substance containing a detectable amount of heroin, a schedule I controlled substance, and a quantity of a mixture and substance containing a detectable amount of cocaine, a schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), for which he was sentenced to 44 months imprisonment.

As relevant here, Petes's prior convictions are punishable by terms of imprisonment of more than one year. As noted above, Petes's convictions occurred in 2023. Therefore, the evidence must be admitted so long as its probative value outweighs its prejudicial effect.

Regarding the first *Caldwell* factor— "the kind of crime involved" — "courts consider both the impeachment value of the prior conviction as well as its similarity to the charged crime." *See Caldwell*, 760 F.3d at 286. "The impeachment value relates to how probative the prior conviction is to the witness's character for truthfulness." *Id.* (citation omitted). "[C]rimes that by their nature imply some dishonesty . . . have greater impeachment value and are significantly more likely to be admissible." *Id.* (citation omitted). "Where a defendant's prior conviction is for the same or substantially same conduct as the charged crime there is 'inevitable pressure on lay jurors to believe that "if he did it before he probably did so this time."'" *United States v. Cherry*, Crim. No. 10-091, 2010 WL 3156529, at *6 (E.D. Pa. Aug. 10, 2010) (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967)).

Here, the offenses in the Indictment relate to a gunpoint robbery. Accordingly, concerning Petes, there is some danger that the jury would impermissibly infer that because Petes committed a firearms offense before, he is more likely to have committed the crimes charged here. However, such danger can be mitigated by a properly constructed limiting instruction.

Indeed, even where there are similarities between the crime with which the defendant is impeached and the present offense, the Third Circuit has held that this concern can be alleviated with the Court's limiting instruction, which "[j]uries are presumed to follow." *See United States v. Patterson*, Crim. No. 09-513, 2009 WL 3423839, at *3 (E.D. Pa. Oct. 21, 2009) (unpublished) (citing *United States v. McKee*, 506 F.3d 225, 230 (3d Cir. 2007)). Moreover, the fact that Petes has a history of committing the same type of criminal conduct—such that his prior convictions that fall within the purview of Rule 609 are similar to his present charges—does not shield them from impeachment. The Sixth Circuit held as much in *United States v. Frazier*, 314 F. App'x 801, 804-06 (6th Cir. 2008) (not precedential). There, the defendant was charged with several offenses, including unlawful possession of a firearm by a convicted felon, and possession of a firearm in furtherance of a predicate offense, in violation of

18 U.S.C. § 924(c). Over the defendant's objection, the District Court concluded that the government was permitted to impeach the defendant with his prior conviction for the unlawful possession of a firearm. In affirming the district court's determination, the Sixth Circuit emphasized that the defendant's election to testify placed his own credibility at issue, and the District Court's inclusion of a limiting instruction curbed the potential for unfair prejudice. In line with the analysis in *Frazier*, application of the first factor thus weighs in favor of allowing the Government to use Whitehead's prior convictions for impeachment purposes.

The second factor in the balancing analysis is the "age of the prior conviction." *Caldwell*, 760 F.3d at 287. The older the conviction, the lesser its probative value, especially if combined with evidence of the defendant's changed character. *See id.* In this case, Petes's prior felony convictions occurred approximately two and a half years ago. Because each of Petes's convictions were within the last ten years, application of the second factor therefore weighs in favor of admission. *See United States v. Figueroa*, Crim. No. 15-0098, 2016 WL 126369, at *3 (D.N.J. Jan. 11, 2016) (admitting four-year-old conviction because "defendant is not being tarred with old matters that no longer fairly represent his character."); *see also United States v. Wilson*, No. 15-cr-94, 2016 WL 2996900, at *3 (D.N.J. May 23, 2016) (admitting prior conviction over 10 years old because evidence suggested defendant's character had not improved).

The third factor is the importance of Petes's testimony to the case. "The tactical need for the accused to testify on his or her own behalf may militate against use of impeaching convictions. If it is apparent to the trial court that the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying." *Caldwell*, 760 F.3d at 287 (quoting Glenn Weissenberger & James J. Duane, *Weissenberger's Federal Evidence* § 609.2 (4th ed. 2001)). However, if "the defense can establish the subject matter of the defendant's testimony by other means, the defendant's testimony is less necessary, so a prior conviction is more likely to be admitted." *Id.* at 288 (quoting *Weinstein's Federal Evidence* § 609.05[3][e]). Given the strength of the Government's evidence, Petes may elect to testify to refute that evidence and may not be able to establish the subject matter of their respective testimony by other means. Their testimony therefore would be important to their defense. The third factor therefore admittedly weighs against admission.

The fourth factor concerns the significance of Petes's credibility to the case. *Caldwell*, 760 F.3d at 288. "When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction." *Id.* (quoting Weinstein's Federal Evidence § 609.05 [3][f]). Petes's credibility, should he testify, would be critical to the case because he would be

providing a firsthand account about the facts of the case. This final factor therefore weighs in favor of admitting Petes's prior convictions.

On balance, application of all four *Caldwell* factors to this case weighs in favor of admitting Petes's prior convictions should he elect to testify. Thus, because the probative value of the convictions outweighs its prejudicial effect, the Government should be permitted to impeach Petes with those convictions pursuant to Rule 609(a)(1)(B) if either of them elect to testify.[1]

### D. The Defendant's statements, including those made in an interview with law enforcement, are relevant and admissible.

The Defendant's own statements to law enforcement are admissible by the Government as statements by a party opponent. Fed. R. Evid. 801(d)(2)(A). *United States v. Price*, 13 F.3d 711, 720 (3d Cir. 1994) ("Patently, [Defendant's] own statements during those [taped] conversations were not hearsay," citing Rule 801(d)(2)(A).) Petes provided a recorded statement to law enforcement after waiving his *Miranda* rights orally and in writing.

The statements that the Government will seek to admit into evidence are also admissible as intrinsic to the charges in the Indictment. Indeed, in those statements, Petes denied his involvement in the crime in some instances but also admitted to visiting the Victim Pharmacy, driving the Grand Marquis on the day of the robbery, and possessing a firearm magazine. He also acknowledged the swelling of his head, which is relevant because surveillance video from the Victim Pharmacy showed Individual-1 hitting his head while trying to jump over the counter during the robbery.

While Rule 801(d)(2)(A) permits the Government to admit the Defendant's own statements in its case-in-chief, the Court should not

---

[1] If the Court is not inclined to permit the Government to ask Petes about the specific crimes he previously committed due to the similarity to the instant charged offenses, the Government should at least be permitted to ask Petes if he was convicted of two different felony offenses in 2023 and sentenced to 24 days imprisonment on each offense, and if he was also convicted of another felony offense in 2023, followed by a sentence of 44 months imprisonment. Furthermore, if Petes claims during trial that he cannot identify an actual firearm and thus opens the door to questioning on this issue, the Government will seek to introduce his prior firearms conviction for proper non-propensity purposes under Rule 404(b), including knowledge.

permit the Defendants to do so. *United States v. Evers*, No. 3:19-CR-250, 2022 WL 16748601, at *3 (M.D. Pa. Nov. 7, 2022) ("A defendant cannot elicit his or her own self-serving statements, offered in support of himself or herself, without taking the stand and submitting to cross-examination.") (citing *United States v. Willis*, 759 F.2d 1486, 1501 (11th Cir. 1985). This is because Rule 801(d)(1) sets forth the prerequisites that must be established before a defendant may admit his own statement, one of which is that "[t]he declarant testifies and is subject to cross-examination about a prior statement." Unless and until the Defendant subject himself to cross-examination and satisfy the remaining requirements of Rule 801(d)(1), the Defendant should be precluded from offering any of his statements as evidence.

### E. The Court should permit the Government to file such additional motions as may be necessary.

While the Government has made every effort to anticipate potential evidentiary issues, as trial preparation progresses, additional evidentiary issues may surface. In that event, the Government respectfully requests leave to file additional *in limine* motions addressing those issues rather than delay their resolution to trial, which could inconvenience the Court and the jury.

Respectfully submitted,

*/s/ Sam Thypin-Bermeo*
By: Sam Thypin-Bermeo
Christopher D. Amore
Assistant United States Attorneys

cc: Pasquale F. Giannetta, Esq., *Counsel for Defendant Nariq Petes*